UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

FADHA UZALDIN,

Debtor.

Case No. 08-16083-RGM
(Chapter 13)

**MEMORANDUM OPINION**

This case is before the court on the debtor's objection to the proof of claim filed by the debtor's former spouse, Basman Al-Rawe.[1] The proof of claim asserts a secured priority claim of $220,000 under Bankruptcy Code §507(a)(1) (spousal and child support). The debtor objected to the classification of the claim but not the amount. He argues that the claim is an unsecured claim without priority because it is an equitable distribution award pursuant to a final decree of divorce. A copy of the final decree of divorce and the court's memorandum opinion were admitted into evidence. The chapter 13 trustee acknowledged receiving $4,303.61 from debtor from the proceeds of a foreclosure sale of the marital home. Ms. Al-Rawe testified at the hearing. The debtor did not testify. For the reasons stated below, the claim will be allowed as a secured claim in the amount of $4,303.61, an unsecured claim with priority under §507(a)(1)(A) in the amount of $30,000, and an unsecured claim without priority in the amount of $185,696.39. However, the evidence presented raises the question of whether this case and the chapter 13 plan were filed in good faith. A show cause order will issue so that this question may be fully addressed.

---

[1] The creditor was pro se. The debtor was represented by counsel.

**Background**

The debtor and Ms. Al-Rawe were granted a divorce *a vinculo matrimonii* by the final decree of divorce entered on January 7, 2008, by the Circuit Court of Loudoun County.[2]  The circuit court also determined the value and ownership of assets, divided the marital property, provided for the custody and support of the parties' minor son, and awarded Ms. Al-Rawe spousal and child support. The equitable distribution award consisted principally an obligation to pay to Ms. Al-Rawe $220,000 which was intended to be paid from the sale of the marital home.  The amount consisted of a lump sum equitable distribution award of $195,500, off-set by $5,500 owed toward a marital debt, plus $30,000 for attorney's fees.  Two notable findings molded the equitable distribution and the spousal and child support awards: the debtor's waste of marital property and his voluntary underemployment.

The circuit court found that the debtor committed waste prior to the dissolution of the marriage principally by transferring assets to his mother without consideration and transferring money out of the country, ostensibly for investment purposes.  The principal property wasted by the debtor was the Leeds Castle Drive property in which the debtor's mother resided.  The property was originally purchased by the debtor and his mother and was titled in their joint names.  The debtor conveyed his interest to his mother without consideration.  However, even after he transferred his interest to his mother, he continued to pay the mortgage on the property with marital funds.  The

---

[2]The divorce decree incorporated the court's November 19, 2007, memorandum opinion.

2

circuit court found that $190,000 equity in the property was derived from marital funds. In addition, the debtor wrote three large checks to his mother and opened an account in her name.[3]

The circuit court also found that the debtor transferred $200,000 out of the country, purportedly to be invested in the debtor's business in Iraq, the Al Nisoor Company. No documentation was provided to the circuit court showing how the funds were spent. The debtor claimed that his ownership interest was valueless.

The circuit court awarded Ms. Al-Rawe child and spousal support. In calculating the support payments, the circuit court found that the debtor was voluntarily underemployed at his position with EBA Engineering where he earned $65,000 per year. In 2003, the debtor had earned $95,000 per year at his position with Genesys Telecommunications.[4] He holds a master's degree in science. The final decree of divorce awarded Ms. Al-Rawe spousal support of $300 per month for four years and child support of $440 per month. She was given 60 days temporary possession of the marital home during which time payment of the support obligations was deferred. The debtor was, however, required to pay the mortgage and utilities on the marital home while she was in possession.

The marital home was an important issue in the divorce proceeding. Its disposition raises concerns in this proceeding. The debtor owned the marital home which the circuit court valued at $565,000. The home was subject to a deed of trust. The circuit court found that there was equity of $260,000 in it. The circuit court granted Ms. Al-Rawe a lien on the martial home to secure her equitable distribution award of $220,000.

---

[3]The checks were in the amounts of $30,000, $40,000, and $70,000. The new bank account was opened with a deposit of $12,184.

[4]The debtor stated in his answer to Question 1 on his Statement of Financial Affairs that he earned $82,232 in 2006 and $24,421 in 2007. In Schedule I, he stated that he had worked for EBA Engineering for 14 months which would be from about August 2007 and that his gross monthly income was $5,408.

Ms. Al-Rawe testified that the debtor did not make the mortgage payments on the marital home for four of five months which appears to correspond roughly to the period from the entry of the final decree of divorce in January 2008 until the foreclosure sale in May 2008. As a result of the missed mortgage payments, the house was sold at foreclosure on May 7, 2008, less than four months after the entry of the final decree of divorce. She testified that the outstanding debt on the home at that time was $295,000; that the debtor bid at the auction but was overbid by one dollar by another individual; and that Ms. Al-Rawe believes that the house was re-sold the month following the foreclosure sale for $445,000. The chapter 13 trustee proffered without objection at the hearing that he received $4,303.61 from the debtor as the remaining proceeds from the foreclosure sale.

This bankruptcy case was filed on October 2, 2008. Schedule A lists no real property. Schedule F lists non-priority claims of $220,000 owed to Ms. Al-Rawe. All other unsecured, non-priority claims listed total $73,328. No secured claims are scheduled. Schedule I states that the debtor is employed by EBA Engineering at an annual salary of $64,896 and had been employed there for 14 months.

The debtor's chapter 13 plan was filed on the same day as the petition. It requires monthly payments to the trustee of $279 for 60 months which is the debtor's monthly net income shown on Schedule J. The total payment to creditors under the plan will be $16,740, about a five percent distribution. There was no objection to the plan and it was confirmed on November 25, 2008, without a hearing upon the expiration of the objection period.

Ms. Al-Rawe timely filed her proof of claim in the amount of $220,000 on January 22, 2009. The debtor objected to the claim.

**Discussion**

**Proof of Claim**

The first question is whether Ms. Al-Rawe's claim is entitled to priority. Section 507(a)(1)(A) gives a first priority to "unsecured claims for domestic support obligations." Bankruptcy Code §507(a)(1)(A). "Domestic support obligation" is defined in §101(14(A). It means a debt owed to a former spouse that is "in the nature of alimony, maintenance, or support." Bankruptcy Code §101(14A). This does not include a debt arising from a property settlement or equitable distribution award. *Compare* Bankruptcy Code §§523(a)(5) and (a)(15).[5] Under chapter 7 of the Bankruptcy Code, neither is dischargeable. Bankruptcy Code §§523(a)(5) and (a)(15). However, in chapter 13, while domestic support obligations are not dischargeable, property settlement and equitable distribution awards are. Bankruptcy Code §1328(a)(2); *In re Johnson*, 397 B.R. 289, 295 (Bankr.M.D.N.C.2008). Domestic support obligations are entitled to priority status and must be paid in full under a chapter 13 plan. *See* 11 U.S.C. §§507(a)(1) and 1322(a)(2); *In re Taylor*, 2007 WL 1234932 (Bankr.E.D.Va. April 26, 2007). Property settlement and equitable distribution debts do not have priority and need not be paid in full in a chapter 13 plan.

Ms. Al-Rawe's claim consists of two parts, the $190,000 net equitable distribution award and the $30,000 attorney's fee award. The $190,000 award is not a domestic support obligation. It is a property settlement obligation. In determining the nature of an obligation arising from a divorce decree, the focus is on the intent of the parties. *See In re Catron*, 43 F.3d 1465 (4th Cir.1994)

---

[5]Bankruptcy Code §523(a)(15) addresses claims that are "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit" but which are not domestic support obligations.

(unpublished opinion) (citing *In re Robb*, 23 F.3d 895, 897 (4th Cir.1994)); *Tilley v. Jessee*, 789 F.2d 1074, 1078 n.4 (4th Cir.1986). In this case, the matters were actually litigated and the relevant intent is that of the circuit court. The final divorce decree is unequivocal as to its intent. The final decree of divorce and the memorandum opinion show how and why the equitable distribution award was made. They separately show how the spousal and child support awards were computed. The discussion shows that the equitable distribution award was, in fact, based on the property interests of the parties, the debtor's waste of marital assets and the division of the marital property. They are organized to show the separate considerations. The awards of equitable distribution, spousal support and child support are in separate, numbered sections with appropriate titles. The monetary award of $190,000 plus $30,000 in attorney's fees, along with the granting of a lien in the amount of $220,000 in the marital residence, is in the decretal provisions of the order in the section titled "Equitable Distribution." The $190,000 portion of Ms. Al-Rawe's claim is, in both appearance and substance, a property settlement obligation of the debtor. It is not entitled to priority status under §507(a)(1)(A) of the Bankruptcy Code.

The $30,000 attorney's fee award stands on a different basis. Attorney's fees follow the nature of the principal award. If the principal award is a domestic support obligation, the attorney's fees incidental to obtaining the domestic support obligation are also treated as a domestic support obligation. *Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky)*, 897 F.2d 743 (4th Cir. 1990). No evidence was presented to this court about the nature of the attorney's fees other than the fact that the circuit court awarded Mr. Al-Rawe the attorney's fees as a part of the domestic litigation which also included child custody issues, spousal support and child support. All attorney's fees incurred in connection with these matters will be treated as a domestic support obligation. While there is no

evidence that permits the court to apportion the attorney's fees between the custody, spousal support and child support issues and the equitable distribution issues, a proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and the amount of the claim. Fed.R.Bankr.Proc. 3001(f). The debtor having presented no evidence on this issue, the proof of claim as explicated by the final decree of divorce is prima facie evidence of the proper allocation of the attorney's fees. The attorney's fees in the amount of $30,000 will be allowed as a priority claim.[6]

The second question is whether Ms. Al-Rawe's claim is a secured claim. The January 7, 2008, final decree of divorce granted Ms. Al-Rawe a lien in the amount of $220,000 on the marital home. The lien was subordinate to properly recorded deeds of trust encumbering the home as of that date. Ms. Al-Rawe testified that the home was sold at foreclosure about May 7, 2008, and that the sales price covered the deed of trust with priority over her lien. The chapter 13 trustee proffered without objection that the debtor turned over proceeds of $4,303.61 from the sale. The foreclosure sale extinguished Ms. Al-Rawe's lien on the marital home. She was, however, entitled to all proceeds remaining after satisfaction of prior liens. Code of Virginia (1950) §55-59.4. Although the real property is discharged from her lien by the foreclosure of a prior lien, her lien on the real property continues in the proceeds of the sale. She has a claim secured by the remaining proceeds from the May 7, 2008, foreclosure sale, specifically, the $4,303.61 turned over to the chapter 13

---

[6] Bankruptcy Code §507(a)(1)(A) gives priority only to "*unsecured* claims for domestic support obligations." In this case, the claim is unsecured because the collateral securing the claim was sold by a prior lienholder leaving this portion of the claim as unsecured. The residual of the foreclosure proceeds in the amount of $4,303.61 is applied to the equitable distribution award.

trustee. The remainder of Ms. Al-Rawe's claim arising from the equitable distribution award is unsecured.

## Good Faith

The hearing on the debtor's objection to his former wife's proof of claim raises troubling issues about the debtor's good faith in both filing this case and in proposing his chapter 13 plan. A chapter 13 bankruptcy petition may be dismissed and a chapter 13 plan may be denied confirmation if filed in bad faith. *See* 11 U.S.C. §§1307(c) and 1325(a)(3); *In re Love*, 957 F.2d 1350 (7th Cir.1992) (holding that although §1307(c) does not contain a specific good faith requirement, lack of good faith is sufficient cause for dismissal under chapter 13). A bankruptcy court can raise the issue of bad faith sua sponte and dismiss a case in order to prevent abuse of the Bankruptcy Code. *See* 11 U.S.C. §105(a); *In re Brown*, 399 B.R. 162 (Bankr.W.D.Va.2009) (citing *In re Hodurski*, 156 B.R. 353 (Bankr.D.Mass.1993) (issuing a notice to show cause as to why the debtor's chapter 13 petition should not be dismissed, and ultimately dismissing it for bad faith)); *see also In re Kestell*, 99 F.3d 146 (4th Cir.1996) (A court may take "any action, even at its own initiative, 'to prevent an abuse of process.'") (quoting 11 U.S.C. §105(a)). Section 105 of the Bankruptcy Code is not an unlimited grant of authority. It is by its own words a limited tool to "carry out the provisions of [Title 11]." 11 U.S.C. §105(a). Its use must comport with the ends of the provisions of the Bankruptcy Code. Where dormancy by the court would permit a subversion of the integrity of the bankruptcy system to go unchecked, however, Congress intended the use of §105(a).

In determining whether a chapter 13 petition was filed in bad faith, the Fourth Circuit follows the factors discussed in *In re Love*, 957 F.2d 1350 (7th Cir.1992). *See In re Kestell*, 99 F.3d at 148.

The test for bad faith looks to the totality of the circumstances and contains both objective and subjective components. The underlying inquiry is based on fundamental fairness. The non-exhaustive list of the factors includes: the nature of the debt; whether the debt would be non-dischargeable in a chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. The burden of demonstrating bad faith is on the moving party. *In re Love*, 957 F.2d at 1355.

Situations where a debtor seeks to misuse the Bankruptcy Code to hinder or prejudice one particular creditor and where the underlying debt could be nondischargeable have been addressed in other cases. In one, the debtor filed a chapter 7 petition and announced his intention to pay every debt except his support and equitable distribution obligations owed to his former spouse. The Fourth Circuit upheld the dismissal of his case as an abuse of the bankruptcy process. *In re Kestell*, 99 F.3d 146 (4th Cir. 1996). In another, the debtor owed money to a creditor whom he had assaulted and who had obtained a judgment against him. The court found that the motivation for filing the petition was solely to hinder and delay collection of the debt by the creditor. The filing was not precipitated by any negative financial event. The chapter 13 case was dismissed with prejudice. *In re Shaheen*, 268 B.R. 455 (Bankr.E.D.Va.2001). In a third case, the debtor listed on her schedules in her chapter 13 case money allegedly owed due to her fraud and embezzlement. The embezzlement claim constituted by far the largest unsecured debt of the debtor. The court dismissed her case because of the likely nondischargeability of the embezzlement claim and the relatively small six-percent distribution proposed in her chapter 13 plan. *In re Herndon*, 218 B.R. 821 (Bankr.E.D.Va.1998).

The Bankruptcy Code provides that the court shall confirm a chapter 13 plan if "the plan has been proposed in good faith and not by any means forbidden by law." Bankruptcy Code §1325(a)(3). The factors in considering whether a chapter 13 plan has been proposed in good faith are similar to the factors in considering the same of the petition, however the burden of proof rests with the debtor. *In re Harrison*, 203 B.R. 253, 255 (Bankr.E.D.Va.1996). Factors to consider include: the percentage of proposed repayment; the debtor's financial situation; the period of time over which payment will be made; the debtor's employment history and prospects; the nature and the amount of unsecured claims; the debtor's past bankruptcy filings; the debtor's honesty in representing facts; and any unusual or exceptional problems facing the debtor. *In re Buchanan*, 2004 WL 1376398 (Bankr.E.D.Va. Feb. 3, 2004) (citing *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir.1982)). The debtor's pre-petition conduct should also be considered. *Neufeld v. Freeman, (In re Freeman)* 794 F.2d 149 (4th Cir.1986).

A case from this district is particularly on point. In *In re Buchanan*, 2004 WL 1376398 (Bankr.E.D.Va. Feb. 3, 2004), the debtor owed $105,000 to his former spouse as part of an equitable distribution award and $27,000 in attorney's fees awarded. The court noted a pattern of pre-petition misconduct by the debtor including: the sale of business equipment to the debtor's father for $13,000 less than market value; frivolous spending or hiding away of $50,000 borrowed against the marital home; $11,000 held in a bank account spent in violation of a court order; $36,300 borrowed by the debtor in violation of a court order; sale of a boat for $40,500 less than market value; sale of a motorcycle in violation of a court order; fraudulent payments to the debtor's mother and father; and failure to list all assets on his schedules and understatement of income. The court denied confirmation of the debtor's first chapter 13 plan. Later, at the hearing on the former spouse's

objection to the debtor's modified chapter 13 plan, the court found that the plan had not been filed in good faith. Due to the debtor's conduct and his inability to file a confirmable plan, the court dismissed the case for cause pursuant to §1307(c).

This case may have indicia of a case and a plan filed in bad faith. The debtor's equitable distribution obligation and attorney's fee award to Ms. Al-Rawe represents approximately 75% of the debtor's scheduled unsecured debt. Her claim is by far the largest. The second largest claim is $17,984 owed to the debtor's attorney in the divorce case. The use of the bankruptcy process to avoid the equitable distribution award follows the debtor's pre-divorce pattern of divesting himself of marital property so as to stymie Ms. Al-Rawe's efforts to obtain an equitable distribution. The circuit court found the debtor to committed waste of the marital assets by transferring money to his mother during the period the parties' marriage was failing. The amounts transferred were significant. The debtor transferred his interest in the Leeds Castle Drive property to his mother for no consideration.[7] He continued to use marital funds to pay the mortgage after he transferred his interest to his mother. The property had equity of $190,000 when the debtor transferred his interest to his mother. The debtor wrote three checks to his mother totaling $140,000. The circuit court traced an additional $12,184 in transfers to marital funds. The debtor transferred $200,000 of marital funds overseas ostensively to be invested in his business in Iraq, the Al Nisoor Company.[8]

The disposition of the marital home is troubling. The circuit court found that there was $260,000 of equity in the marital home and granted Ms. Al-Rawe a lien on the home to secure the

---

[7] The debtor held a one-half interest in the property with his mother.

[8] The Al Nisoor Company is not disclosed on Schedule B or in response to Question 18 of the Statement of Financial Affairs which requests information on any business interest in which the debtor owned at least a five percent interest for six years preceding the petition.

11

payment of the equitable distribution and attorney's fee award. He was ordered to pay the mortgage on the home after the entry of the final decree of divorce until Ms. Al-Rawe vacated the home. Because the debtor could not refinance the property to pay the equitable distribution award, the circuit court appointed a commissioner in chancery to sell it. Ms. Al-Rawe testified in this court that the debtor's failure to pay the mortgage caused the home to be sold at foreclosure. She further testified that she believed that the home was re-sold the following month for a significantly higher price than the purchase price at the foreclosure sale. The debtor was employed. The circuit court's order that he pay the mortgage reflects the circuit court's determination that he had the ability to make the mortgage payment. This pattern of conduct, which could be interpreted to be aimed solely avoiding paying Ms. Al-Rawe, could support a finding that the case or the plan were filed in bad faith.

There is also the difficulty with the debtor's employment. The circuit court, relying on expert testimony, found him to be voluntarily underemployed with an annual salary of $65,000 per year and imputed an additional $30,000 in annual salary in calculating its award of spousal support. The debtor remains at the same job with the same $65,000 salary. This court considers underemployment in determining a debtor's good faith in proposing a plan. Here, if the debtor remedied his underemployment, he could increase his annual income by $30,000 all of which could be paid to the chapter 13 trustee.

These matters were not disclosed and are generally not in the debtor's Schedules or Statement of Financial Affairs. In these circumstances, the court will issue a notice to show cause why the November 25, 2008, order confirming the debtor's chapter 13 plan should not be vacated because

the plan was not filed in good faith or why the case should not be dismissed for having been filed in bad faith.

    Alexandria, Virginia
    August 7, 2009

                                        /s/ Robert G. Mayer
                                        Robert G. Mayer
                                        United States Bankruptcy Judge

Copy electronically to:

David R. Young, Jr.
Thomas P. Gorman

Copy mailed to:

Basman Al-Rawe
43950 Harbor Hills Terrace, Apt. 110
Leesburg, VA 20176-3446                                                              15219