# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

FADHA UZALDIN,

    Debtor.

Case No. 08-16083-RGM
(Chapter 13)

## MEMORANDUM OPINION

THIS CASE is before the court on the debtor's motion to dismiss his chapter 13 case and a creditor's objection to it.  The debtor argues that he has an absolute right to dismiss his case under §1307(b) of the Bankruptcy Code.  The creditor argues that because of the debtor's misconduct, the court should not dismiss the case but should fashion appropriate relief to remedy the misconduct.  She argues that the case should be converted to a proceeding under chapter 7.  In this district, the District Court has held that a debtor does not have an absolute right to dismiss his chapter 13 case. *In re Mitrano*, 472 B.R. 706, 710 (E.D.Va. 2012); *Gorman v. Abebe,* (E.D.Va. Civil Action No. 1:12-cv-125, May 21, 2012) (Docket Entry 6).  This case will be dismissed, but with prejudice.

The debtor and Basma Al-Rawe were divorced by a Final Decree of Divorce entered by the Circuit Court of Loudoun County, Virginia on January 7, 2008.  The circuit court awarded Ms. Al-Rawe an equitable distribution award of $190,000; attorney's fees of $30,000; and spousal and child support.  It secured the judgment with a lien on the marital home which it found to have had equity of $260,000 and ordered the marital home to be sold.[1]  It gave Ms. Al-Rawe possession of the marital

---

[1] The sale was intended to be accomplished promptly.  The court appointed an attorney as "Special commissioner of Sale to forthwith place the residence . . . on the market for sale and/or auction and the Court retains jurisdiction in this case to review, approve and/or reject any proposed sale . . . and the enforcement of the payment of the monetary award owed to Al-Rawe."  Final Decree of Divorce ¶6 at 9.

1

home for up to 60 days and ordered the debtor to make the mortgage payments. The debtor made no mortgage payments and the home was sold at foreclosure on May 7, 2008, four months after the Final Decree of Divorce was entered. Except for a surplus of $4,303.61 from the foreclosure sale which was paid to the chapter 13 trustee, the $260,000 in equity in the marital home was lost.

The debtor filed his chapter 13 petition in this case on October 2, 2008, five months after the foreclosure sale and nine months after the entry of the Final Decree of Divorce. There appears to have been no change in the debtor's circumstances, except the foreclosure, between the time of the circuit court's Final Decree and the filing of the bankruptcy petition.[2] The petition was filed principally to discharge the equitable distribution award. The debtor listed no other significant creditor; Ms. Al-Rawe accounting for 75% of all claims scheduled. Under chapter 7, he would not have been able to discharge the equitable distribution award. He proposed a minimal payment plan of $279.00 a month for 60 months which would have resulted in payment to unsecured creditors of 5% of their claims. The debtor scheduled Ms. Al-Rawe's claim as an unsecured claim. Under this plan she would have been paid about $11,000 over five years.

Ms. Al-Rawe, appearing pro se, filed a proof of claim asserting a priority claim of $220,000 timely, but after the plan was confirmed. The debtor objected to the classification of the claim but not to the amount. The court allowed Ms. Al-Rawe's claim in the amount of $4,303.61 as a secured claim; $30,000 as a priority claim; and $190,000 as an unsecured, non-priority claim. *In re Uzaldin*, 418 B.R. 166 (Bankr.E.D.Va. 2009). As a result of the claims litigation, the debtor filed modified plans, the last of which was confirmed on April 9, 2010. It provided for payments totaling

---

[2]The debtor stated in Schedule I that as of October 2, 2008, he had been employed at his current job for 14 months.

$43,650.00, an increase of $26,910.00 from his first confirmed plan. Under this plan, Ms. Al-Rawe would be paid $30,000 on her priority claim; about $3,600 of her unsecured claim[3]; and $4,303.61 on her secured claim. The confirmation order also required the debtor to provide his income tax returns to the chapter 13 trustee within 45 days after the due date of the tax returns.

The chapter 13 trustee filed a motion to dismiss the case on December 13, 2010 because the debtor was $3,453.00 behind on his payments to the trustee. The debtor responded pro se with a letter that was treated as a motion for a continuance of the hearing on the trustee's motion. He stated that he was requested to take leave without pay from December 2009 to April 2010 with no guarantee that he would have a job in April 2010, the end of the layoff period. He was unable to find a job in the area, so he "elected to try my luck overseas; I received a temporary contract for six months which was then extended till present [December 30, 2010]." Letter in Response to Motion to Dismiss dated December 30, 2010. The trustee's motion was resolved by an amended confirmation order amortizing the missed payments over the remaining period of the plan at $1,104 a month. The amended confirmation order was entered on April 14, 2011.

Ms. Al-Rowe, now represented by counsel, requested on May 24, 2011, a Rule 2004 examination of the debtor to which the debtor objected. The motion for the Rule 2004 examination stated that:

> The Rule 2004 examination is being sought by Movant in order to properly examine, primarily, 1) transactions and conveyances of property made by the Debtor among and between certain operating entities which are or were owned and/or controlled by the Debtor, including the Al Nisoor Company, and 2) income that the Debtor receives from employment or as an independent contractor. Upon information and belief, such transfers and financial information may provide a basis upon which this case may be dismissed and/or objections to discharge may be raised.

---

[3]This is about two percent of the allowed unsecured claim.

3

Motion for 2004 Examination, ¶5.

The parties resolved this matter. The debtor agreed to and was ordered to produce his 2010 pay stubs, Form W-2 or 1099 and his 2010 federal income tax return. Consent Order Granting Motion for 2004 Examination entered on August 9, 2011.

The chapter 13 trustee filed a motion on May 8, 2012, seeking to modify the debtor's chapter 13 plan by increasing the monthly payments from $1,014 a month to $11,193.41 a month. *In re Murphy,* 474 F.3d 143 (4th Cir. 2007); *In re Arnold,* 869 F.2d 240 (4th Cir. 1989). He stated:

> Debtor has not provided Trustee with his 2010 or 2011 income tax returns. Instead, Trustee obtained a copy of Debtor's 2010 income tax returns from one of his creditors. Trustee still does not have a copy of Debtor's 2011 income tax returns.
>
> Debtor most recently amended his Schedule I and J on February 23, 2010 when he filed an Amended Chapter 13 Plan. On that Schedule I, Debtor claims his monthly gross income is only $5,000.00 per month. On the contrary, Debtor's 2010 tax returns show that he earned $204,517.00 in foreign earned income that year, which is over three times greater than the amount disclosed on Schedule I.

Motion to Modify Chapter 13 Plan.

At the same time that the trustee filed his motion to modify the debtor's chapter 13 plan, he also filed a motion to dismiss because the debtor had failed to provide him with his federal and state income tax returns for 2011. He stated that the debtor also failed to provide his 2010 income tax returns to him, but that he had obtained them from a creditor through a Rule 2004 order. Ms. Al-Rawe joined in the trustee's motions.

The hearings on the trustee's motions were continued three times. At the hearing on July 25, 2012, the court granted the trustee's motion to modify the plan and the trustee withdrew his motion

4

to dismiss the case. On July 26, 2012, debtor's counsel moved to withdraw.[4] On July 27, 2012, the order granting the modification of the plan was entered. On July 30, 2012, the debtor filed his motion to dismiss, to which Ms. Al-Rawe objected.

A hearing was held on the debtor's motion to dismiss. The debtor testified telephonically from Kuwait that he was working in Kuwait. He acknowledged that he was being paid a premium for his services. However, he testified, the cost of living was very high. He also testified that he had repaid prepetition creditors he had not originally scheduled. The payments were very substantial. The creditors were friends and family living in the Middle East and the payments are, effectively, not recoverable by a trustee in bankruptcy. The debtor never disclosed this information to the chapter 13 trustee and by his recalcitrance, endeavored to conceal these facts and his substantially increased income.

The debtor quite plainly sought to avoid his obligations to Ms. Al-Rawe, his former spouse. The effort began during the marriage when he transferred some of his assets to his mother and to business partners abroad. The effort continued after the circuit court entered the Final Decree of Divorce which granted Ms. Al-Rawe a lien on the marital home which had sufficient equity to pay her equitable distribution award. Even though he was ordered to make the mortgage payments, he refused to do so and allowed the house to go to foreclosure with only nominal net proceeds available

---

[4]Counsel's motion to withdraw stated:

    1. Counsel has recently learned of circumstances regarding the debtor that make his continued participation in this chapter 13 proceeding ethically impermissible.
    2. Counsel has sought the advice of the Virginia State Bar with regard to his obligations, and is acting upon the advice he received.
    3. Counsel has informed the debtor of the consequences of the information discovered, and has written to the debtor as bar counsel had advised.

Motion to Withdraw, at ¶¶1-3.

to pay Ms. Al-Rawe. He then filed his petition in bankruptcy in this case under chapter 13 in an effort to discharge the equitable distribution award in consideration of only nominal payments to her.[5] While the modified plan was under consideration, he left his job – on threat of a layoff – and left the country to obtain better employment abroad. During this period neither the chapter 13 trustee nor the court was aware of his layoff notification or his employment abroad, most likely at a much improved salary.[6] He concealed his improved fortunes. Rather than satisfying his obligations under his chapter 13 plan, he paid creditors of his choice that he had not disclosed in his bankruptcy petition. Had the debtor been the proverbial "honest, but unfortunate debtor",[7] his schedules would have reflected all of his prepetition creditors. He would have substantially paid all of his creditors, both those that he should have listed and those that he listed. But, he did not. He silently diverted his income to creditors of his choice who were not listed. His income was sufficient to pay all of his originally scheduled creditors in full during the course of his chapter 13 plan.

The debtor abused the protections and opportunities provided to him under the Bankruptcy

---

[5] The debtor could have filed his petition in bankruptcy before the foreclosure sale in an effort to assist the Special Commissioner obtain a sale and pay off Ms. Al-Rawe, his largest creditor. Instead of using chapter 13 to attempt to pay the equitable distribution award, he waited until after the foreclosure sale and sought to use chapter 13 to discharge the equitable distribution award.

[6] The state court found that the debtor was voluntarily underemployed at the time of the divorce hearing. Final Decree of Divorce at 11.

[7] In *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654 (1991) the Supreme Court stated:

This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Ibid.*

.

Code and will not be permitted to exit bankruptcy unfettered. Conversion to chapter 7 – the remedy Ms. Al-Rawe urges – is not helpful. The debtor is in Kuwait and has no apparent intention of returning to the United States. This court cannot effectively enforce its orders against him unless and until he returns to the United States. He will most likely not cooperate with a chapter 7 trustee – he did not cooperate with the chapter 13 trustee. There do not appear to be any assets in the United States that the chapter 7 trustee could recover. In these circumstances, a conversion to chapter 7 would be futile.

There is a potential voluntary conveyance of a one-half interest in a house from the debtor to his mother that a chapter 7 trustee might be able to avoid, however, Ms. Al-Rawe is in as good position as a trustee to pursue that action. Because she is the largest unsecured creditor, the other creditors would not benefit substantially from the trustee taking such an action. There is also the potential complication of the previously unscheduled prepetition creditors. It is better to leave this potential action to Ms. Al-Rawe.

Having abused the bankruptcy system, the debtor will not be permitted to return until he puts his creditors in the same position that they would have been had he prosecuted this chapter 13 case in good faith. The case will be dismissed with prejudice, to-wit, the debtor may not file another petition in bankruptcy or be a debtor in any case under any chapter of the Bankruptcy Code unless and until he has paid in full and in a manner that is not avoidable under the Bankruptcy Code all the debts he scheduled in this case on his schedules filed on October 2, 2008, or for which a proof of claim was timely filed.

Alexandria, Virginia
December 21, 2012

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Richard G. Hall
Thomas P. Gorman
Jeffery T. Martin

18202